**C. H. HATTING GRAVEL COMPANY, INC., Respondent,**

v.

**Jerome W. KAPPERMAN, Appellant.**

**No. 49226.**

Supreme Court of Minnesota.

May 11, 1979.

Vander Kooi & Hagedorn and Michael Hagedorn, Luverne, for appellant.

Skewes, Klosterbuer & Connell and Mort B. Skewes, Luverne, for respondent.

Heard by SHERAN, C. J., KELLY and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

Plaintiff, C. H. Hatting Gravel Company, Inc., commenced this action to recover amounts owed it by defendant, Jerome W. Kapperman, under the terms of an agreement entitled "Lease of Motor Vehicle."[1] Judgment was entered for plaintiff in the

---

1. The "Lease of Motor Vehicle" was in effect a sale with a retained security interest, rather than a true lease. *See James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis*, 292 Minn. 277, 194 N.W.2d 775 (1972); Minn.St. 336.1– 201(37). Labeling the agreement a "sale" rather than a "lease," however, is not determinative of the issues presented; for convenience, we will refer to it as a lease.

amount of $41,603.42, and defendant appeals. The issue presented is whether defendant assumed plaintiff's indebtedness to John Deere with respect to the motor vehicles leased, and whether he was consequently relieved of his obligation to plaintiff when plaintiff's debt to John Deere was satisfied by the proceeds of a credit life insurance policy on the life of plaintiff's president, C. H. Hatting. We hold that defendant did not assume plaintiff's obligation, and we therefore affirm.

In November 1974, plaintiff entered into a retail installment contract with a John Deere dealer for the purchase of a 4 wheel drive loader and for the refinancing of another loader. The installment contract was signed by plaintiff by its president (C. H. Hatting), and by C. H. Hatting individually.

The John Deere dealer assigned its installment contract with plaintiff to John Deere Industrial Equipment Company, Denver, Colorado. Pursuant to the terms of the installment contract, John Deere provided life insurance protection for Hatting in the amount of his indebtedness under the contract; John Deere, not plaintiff or Hatting, paid the premiums on the credit life insurance policy.

In May 1975, plaintiff sold various assets of its gravel business, as well as the business itself, to defendant. One of the documents effecting this transfer was the "Lease of Motor Vehicle," which is the subject of this controversy. This agreement provided for the lease by plaintiff to defendant of the two 4 wheel drive loaders discussed above, which were being purchased by plaintiff from John Deere under an installment contract. Defendant's payment schedule under the lease coincides exactly with plaintiff's payment schedule under his installment contract with John Deere.

The lease specifies that payments are to be made at Hatting's residence, or as otherwise directed by him. Hatting directed that the payments be made directly to John Deere, to be applied to the indebtedness existing as described in the installment contract, and he delivered to defendant the computerized payment coupons that had been supplied plaintiff by John Deere for use in remitting payments.

Under the terms of the lease, defendant has exclusive dominion of the loaders, and is responsible for all insurance, licensing, operating, and maintenance costs. Furthermore, upon full payment of the rent due, title to the loaders will pass automatically to defendant, without any additional payment or document of transfer.

Defendant made payments to John Deere as called for by the lease until after Hatting's death in August of 1975, when the entire balance of plaintiff's unpaid indebtedness under the installment contract was paid to John Deere by the proceeds of the credit life insurance policy on Hatting's life. Plaintiff then brought this action to recover the payments due from defendant under the lease. Upon concluding that defendant had not assumed plaintiff's indebtedness to John Deere, the trial court entered judgment for plaintiff.

Two issues are before us on appeal:

1. Did defendant assume plaintiff's indebtedness to John Deere? and

2. If so, does the satisfaction of plaintiff's debt to John Deere by the proceeds of a credit life insurance policy, whose premiums were paid by John Deere, inure to the benefit of plaintiff or defendant?

■ 1. There is no ambiguity in the "Lease of Motor Vehicle"; therefore, it is not necessary or proper to go beyond its terms to construe it. The *Telex Corp. v. Data Products Corp.*, 271 Minn. 288, 135 N.W.2d 681 (1965).

■ The plain language of the lease does not support defendant's contention that he assumed plaintiff's debt to John Deere under plaintiff's installment purchase contract. The lease is entirely void of language indicating either that plaintiff was assigning his installment contract to defendant or that defendant was assuming plaintiff's indebtedness under that contract. Moreover, the lease expressly states that defendant is to make payments "at the

place of residence of C. H. Hatting, Luverne, Minnesota, or as otherwise designated by him." As long as Hatting retained control over the payments to be made under the lease, no assumption of the indebtedness could take place. See, e. g., *Jackson Nat'l Bank v. Christensen*, 146 Minn. 303, 178 N.W. 494 (1920). Thus, defendant's contractual duty runs to plaintiff alone, not to John Deere.

2. Although the first issue is dispositive of this matter, an examination of similar cases from other jurisdictions suggests that even if defendant had assumed plaintiff's liability under the installment contract, the proceeds of the credit insurance policy on Hatting's life should not inure to defendant's benefit. Defendant suffered no loss as a result of Hatting's death, and had no insurable interest in his life. He is still in possession of the vehicles he contracted to purchase, and must only remit the amount to plaintiff that he previously agreed to pay. See, e. g., *Leuning v. Hill*, 79 Wash.2d 396, 486 P.2d 87 (1971); *Hatley v. Johnston*, 265 N.C. 73, 143 S.E.2d 260 (1965); *Betts v. Brown*, 219 Ga. 782, 136 S.E.2d 365 (1964); and *Kincaid v. Alderson*, 209 Tenn. 597, 354 S.W.2d 775 (1962). See generally 45 N.C.L. Rev. 270 (1966); 43 Tex.L.Rev. 580 (1965).

Affirmed.